GROSSE POINTE FARMS FIRE FIGHTERS ASSOCIATION
*v.* GROSSE POINTE FARMS CITY CLERK.

1. MUNICIPAL CORPORATIONS—CHARTER AMENDMENT—INITIATIVE PETITION—PRESUMPTION.
   Petitions, in proper form, to initiate city charter amendment are presumed to be valid and to have been completed in accordance with the circulator's affidavit (CL 1948, § 117.25).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  28 Am Jur, Initiative, Referendum and Recall §§ 30, 31.
[3, 4]  28 Am Jur, Initiative, Referendum and Recall §§ 23–25, 30–32.
[5]  28 Am Jur, Initiative, Referendum and Recall §§ 23–25, 30–32, 40.
[6]  5 Am Jur 2d, Appeal and Error § 1009.

2. SAME — CHARTER AMENDMENT — INITIATIVE PETITION — PRESUMPTION.

  Presumption of validity accorded to petitions, in proper form, to initiate amendment of city charter disappears, and the compliance of the petitions with statute must be affirmatively shown, upon a showing by the city clerk of sufficient magnitude to rebut the presumption (CL 1948, § 117.25).

3. SAME—INITIATIVE—PETITIONS.

  Testimony of city clerk that he found some spurious signatures on petition to initiate city charter amendment was not decisive, and petitioners were free to show that sufficient valid signatures were on the petition.

4. SAME—INITIATIVE PETITIONS—CHARTER AMENDMENT.

  Presumption of validity of petition to initiate special election to amend city charter disappeared, where testimony of one of the circulators of parts of the petition showed that his affidavit that each signature was made in his presence was false (CL 1948, § 117.25).

5. MANDAMUS—INITIATIVE PETITIONS—PRESUMPTIONS—PETITIONS—SIGNATURES.

  Dismissal of complaint for mandamus to compel certification of petitions for charter amendment was proper, where presumption of validity of petitions had disappeared when the validity of some of the signatures was called into question by testimony of the city clerk, affidavits were found improper, and plaintiffs did not try to prove affirmatively that other circulators' affidavits were not subject to question or that sufficient valid signatures were included to place the matter on a special or regular election (CL 1948, § 117.25).

6. COSTS—PUBLIC QUESTION—MANDAMUS—CHARTER AMENDMENT.

  No costs are allowed on appeal from circuit court dismissal of mandamus action to compel city clerk to certify initiative petitions for charter amendment to city council and to compel submission of the question to the electorate, a public question being involved.

Appeal from Wayne, Moynihan (Joseph A., Jr.), J. Submitted Division 1 March 13, 1968, at Detroit. (Docket No. 5,166.) Decided April 17, 1968. Rehearing denied June 3, 1968. Leave to appeal denied August 12, 1968. See 381 Mich 770.

Complaint for mandamus by Gross Pointe Farms Fire Fighters Association, a voluntary unincorporated association, Lucien Snep, for himself and as president of the association, and Samuel Cardella, for himself and as secretary-treasurer of the association, and Harold T. Campbell against Peter Caputo, Clerk of the City of Grosse Pointe Farms, a municipal corporation, to compel the calling of a special election. Complaint dismissed. Plaintiffs appeal. Affirmed.

*Theodore Sachs,* for plaintiffs.

*Dickinson, Wright, McKean & Cudlip* (*Henry C. Cashen, II,* of counsel), for defendant.

J. H. GILLIS, P. J. Plaintiffs are sponsors and circulators of initiatory petitions for a special election to amend the charter of the city of Grosse Pointe Farms. CL 1948, § 117.25 (Stat Ann 1949 Rev § 5.2104). Petitions containing approximately 2,296 signatures were presented to defendant city clerk for certification to the Grosse Pointe Farms city council.

Defendant subsequently notified plaintiff fire fighters association that he would take no further action on the petitions for the reasons, *inter alia,* that the petitions were not in proper form, that they contained signatures of persons not registered to vote, and that certain persons signed the petitions more than once. Plaintiffs brought this action for mandamus to compel certification of the petitions and the submission of the charter question to the electorate.

In a hearing before the trial judge, defendant testified that his "spot check" examination disclosed certain discrepancies in the signatures in that it ap-

peared that in some instances a husband or wife
signed for both parties; in other instances the signer
did not put down the date and it was filled in after-
wards either by the signer or by the circulator.   De-
fendant testified that he had checked a majority of
the signatures and that by comparison with the list
of registered voters, it was ascertained that some
of the signers were not registered voters of the city
of Gross Pointe Farms.

Upon examination of one of the circulators it was
disclosed that in at least one instance the signature
was not affixed in the presence of the circulator.
Each petition was verified by affidavit of the circu-
lator which stated, among other things, that each sig-
nature was made in the presence of the circulator.
The transcript contains the following cross-exami-
nation of one of plaintiffs' circulators:

"*Q.* But you do state that in at least one or more
instances the husband or wife took it to another part
of the house to have it signed?

"*A.* I know, oh, three, I would say—four possibly.

"*Q.* Did you sign this verification that is required
under the act?

"*A.* Yes, sir, I did.

"*Q.* Did you read it before you signed it?

"*A.* Yes, sir.

"*Q.* Did you see the statement that each of them
signed in your presence?

"*A.* May I see it again, sir?   Evidently I must
have read it, sir, yes.

"*Q.* Then that is not a true statement?

"*A.* What is that?

"*Q.* That each of these signers did sign in your
presence?

"*A.* No, sir, that would not be.

"*Q.* That would not be a true statement, and you
state definitely that within your knowledge no one

signed for another person, no person signed for another person?

"*A*. As far as I am concerned, like I say, the people may have signed it upstairs. I did not go with them into the bathroom or down in the basement.

"*Q*. And in no instance did you tell them it would be all right to sign?

"*A*. Not to sign another person's name."

The hearing concluded with dismissal of the complaint for mandamus and plaintiffs have taken this appeal. Because of the urgency of this matter we have allowed this appeal by way of emergency application.

Considerable and weighty issues are raised concerning this very important right of the people under the home rule act* to initiate charter amendments and to call special elections thereon by initiatory petition. Such initiatory proceedings are governed by section 25 of that act (CL 1948, § 117.25 [Stat Ann 1949 Rev § 5.2104]) which, in pertinent portion, states:

"The initiatory petition herein referred to shall be addressed to and filed with the city clerk. Such petition shall state what body or organization, if any, or if no body or organization, then what person or persons are primarily interested in and responsible for the circulation of such petition and the securing of such amendment. Each sheet of such petition shall be verified by the affidavit of the person who obtained the signatures thereto and shall be signed by at least 5 per centum of those persons residing in and registered to vote in the municipality, the charter of which is to be amended, as of the date when they respectively signed such petition: Provided, that each signer of such initiatory petition shall inscribe upon such petition, immediately after

* PA 1909, No 279 (CL 1948, § 117.1 *et seq.* [Stat Ann 1949 Rev § 5.2071 *et seq.*]), as amended.

his signature, the date of signing and his street address. Any signatures obtained more than 1 year before the filing of such petition with the city clerk shall not be counted.

"The verification hereinbefore referred to shall state that the petition was circulated at the request of and pursuant to the directions of the association, organization, person or persons desiring the said amendment and shall also state that such signatures were obtained by the person so verifying said petition; that such signatures are the signatures of the persons purporting to sign the same and that each of them signed in his presence and that the person verifying such petition has good reason to believe and verily does believe that the signers thereof are duly registered electors of such municipality and are the identical persons their signatures purport them to be.  *  *  *

"Within 45 days from the date of the receipt of any such petition, the city clerk shall check or spot check the signatures on such petition with the registration rolls of the municipality or in some other proper manner determine whether petitioners are duly registered electors, as of the dates of their respective signatures, of the municipality the charter of which is to be affected by such amendment. If he shall believe that the number of registered electors signing such petition equals or exceeds 5 per centum of the registered electors of said municipality, and in all other respects conforms to the provisions of this section, he shall certify to such facts and report the same to the city commission or council, as the case may be. If upon examination and investigation, it shall be found that the petition contains spurious signatures,  or false affidavits, or if it shall be found that there are less than the required number of signatures, he shall report such fact to the city commission or council and no further action upon such petition shall be had.  Upon affirmative showing that the finding of such city clerk is erroneous, any registered elector of the city may

sue out a writ of mandamus in the circuit court of the county in which the city is located or obtain other appropriate legal relief."

### Burden of Proof

The fine point on this appeal deals with burden of proof. At issue is whether plaintiffs have the burden of proving the signatures are in sufficient number to render the petitions valid or whether defendant has the burden of disproving a sufficient number of the signatures so as to destroy the petitions.

Initially, the petitions in proper form are presumed to be valid and to have been completed in accordance with the circulator's affidavit. *Fontana* v. *Lindholm* (1936), 276 Mich 361. Upon a showing by the city clerk of sufficient magnitude tending to rebut this presumption, the presumption will disappear and the compliance of the petitions with the statute must be affirmatively shown. *Fontana* v. *Lindholm, supra.*

Obviously it is a heavy burden of proof to show such a large number of signatures are valid and the benefit of the presumption should not be too easily removed. On the other hand, city officials and the public at large are entitled to sufficient protection against those who would abuse this important privilege by disregarding the statutory provisions.

We believe there was sufficient evidence adduced in the trial court to support a finding that plaintiffs should come forward and affirmatively show their entitlement to relief. Testimony of the city clerk regarding his examination of the signatures is to be considered, but is not, to our minds, decisive. We are persuaded, however, that once the validity of the signatures is called into question and the affidavits are shown to be improper, the presumption of pro-

priety of the petitions disappears.  In *Fontana* v. *Lindholm, supra,* at p 365, the Court states:

"In the instant case we find that the clerk made an investigation and found that the petition contained spurious signatures; that several of the signers to the petition were not qualified electors; that one or more of the affidavits attached to the, petition were false in that the affiant was not the circulator of the section of the petition; and that the notary public did not properly administer the oath required for an affidavit.  When such a showing has been made by the clerk, the presumption of legality of such petition vanished and the failure by the proponents of said petition to show that all of the essential requirements of the act have been complied with is fatal."

Plaintiffs were free to show that other circulators' affidavits were not subject to question or that sufficient valid signatures were included to place the matter on a special or regular election.  The trial judge specifically offered plaintiffs this alternative but they chose to rest on the record as made.  There was no error in dismissing the complaint for lack of any affirmative showing of entitlement to relief.

Affirmed.  No costs, a public question being involved.

FITZGERALD and McGREGOR, JJ., concurred.